Filed 10/28/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| GOVIND VAGHASHIA et al., | B331073 |
| Plaintiffs, Cross-defendants and Appellants, | Los Angeles County Super. Ct. No. BC696133 |
| v. | |
| PRASHANT VAGHASHIA et al., | |
| Defendants, Cross-complainants and Respondents. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Jon R. Takasugi, Judge.  Affirmed.

Willkie Farr & Gallagher, Eric J. Bakewell, Benita S. Yu; Lal Harris & Edwards Law Group and Hari S. Lal for Plaintiffs, Cross-defendants and Appellants.

M. Cris Armenta P.C., M. Cris Armenta; Shah Attorney Group and Earth Shah for Defendants, Cross-complainants and Respondents.

————————————————————

Govind Vaghashia and the other plaintiffs, cross-defendants, and appellants[1] appeal an order of the trial court denying their motion to vacate a settlement agreement between the Govind Parties, on the one hand, and defendants, cross-complainants and respondents Prashant and Mita Vaghashia, on the other.

We deny Prashant and Mita's motion to dismiss this appeal based on the disentitlement doctrine. The record citations in their motion are inadequate to fully substantiate their allegations.

Turning to the appeal, we find no abuse of discretion in the trial court's conclusion that the Govind Parties are estopped from seeking to vacate a settlement agreement that they previously moved to enforce and that the trial court did, in fact, enforce. The trial court did not enforce the agreement the way the Govind Parties wanted, but the trial court accepted the Govind Parties' position that the agreement was enforceable. Their present position that the agreement is unenforceable is totally inconsistent with their previous position in their motion to enforce the agreement. We therefore affirm.

---

[1] The other plaintiffs, cross-defendants, and appellants are: (1) Sonal G. Vaghashia; (2) American Financial Services; (3) The Vaghashia Family Limited Partnership; (4) Atmaswaroop Investments, LLC; (5) Sherman Oaks First Plaza, LLC; (6) Five Stars Hospitality, LLC; (7) Bellflower First Plaza, LLC; (8) Oak First Plaza, LLC; and (9) Graphic Rsch Properties, LLC, formerly known as, Graphic Research, LLC. We refer to these entities and individuals, together with Govind Vaghashia, as the "Govind Parties."

## BACKGROUND

As a preliminary matter, the settlement agreement has been filed under seal in this court at the Govind Parties' request. However, the "redacted – public version" of the Govind Parties' opening brief contains extensive descriptions of its terms, including, in some places, dollar amounts. Prashant and Mita did not redact any information in their respondents' brief; nor did the Govind Parties in their reply brief. Each revealed still more detail about the settlement agreement. These papers are all accessible to the public.

We limit our recitation of the facts to those relevant to our resolution of the appeal and which are disclosed both in the portion of the record which was not sealed and the parties' public briefs.

Prashant and Govind are brothers. After years of collaborating in real estate and other business ventures, their relationship soured. Prashant and his wife Mita sued Govind, his wife Sonal, and certain other Govind Parties and affiliated entities, asserting a 50 percent interest in the business portfolio Prashant and Mita alleged they built together.

Govind then sued Prashant and an entity he and Prashant co-owned based on Prashant's alleged mismanagement. Prashant and Mita cross-complained to again assert their claim to a 50 percent interest in the business portfolio.

A bench trial on Govind's complaint and Prashant and Mita's cross-complaint commenced in March 2022. The trial court suspended the trial to permit the parties to work towards a consensual resolution. In June 2022, the parties entered into a settlement agreement. In broad terms, the agreement provided for the Govind Parties and certain other affiliates to pay

3

Prashant and Mita $35 million in several installments. The parties agreed to characterize a portion of this sum as a gift and the rest as compensation for physical and emotional injuries suffered by Prashant and Mita.

The Govind Parties agreed to collateralize their payment obligations through deeds of trust on real property having an equity value of at least $26 million. Rather than identify the properties to serve as collateral at the time of settlement, the parties agreed the Govind Parties would propose a list and Prashant would not unreasonably withhold his consent to the list.

The settlement agreement also called for Govind and Sonal to execute a quitclaim deed of their 70 percent interest in Prashant and Mita's personal residence in Burbank (the Burbank Home).

The parties also agreed the trial court would retain jurisdiction to enforce the settlement agreement pursuant to section 664.6 of the Code of Civil Procedure.

Before long, disputes over the interpretation of the settlement agreement arose. The Govind Parties paid the first installment late (after making a series of complaints about the proposed wire instructions) and then refused to pay interest that Prashant and Mita claimed was due under the agreement. Prashant withheld consent to Govind's list of properties to serve as collateral for the remaining obligations, noting the values Govind used were highly inflated relative to values he had ascribed to the same properties less than three weeks earlier. Govind responded that Prashant and Mita bore the burden of obtaining appraisals for the properties to justify withholding consent, which Prashant and Mita disputed. And, the parties

4

were unable to agree on a form of quitclaim deed to convey Govind and Sonal's interest in the Burbank Home to Prashant and Mita. Govind and Sonal insisted on inserting a consideration term that was not contemplated by the settlement agreement.

With Prashant and Mita continuing to demand interest, withholding consent to the collateral security list, and rejecting Govind and Sonal's proposed form of deeds for the Burbank Home, Govind and Sonal filed a motion to enforce the terms of the settlement agreement on October 18, 2022. Prashant and Mita filed a counter motion to enforce on October 24, 2022.

The trial court heard the competing motions on December 8, 2022. After taking the matter under submission, the court recognized it was "empowered to enforce [the] provisions of the settlement agreement" and proceeded to do so— largely in the manner requested by Prashant and Mita. The court's minute order adopts none of the interpretations of the settlement agreement proffered by the Govind Parties.

At some point prior to the hearing on their motion to enforce, the Govind Parties began to question whether they wished to be bound by the settlement agreement at all. While the exact date their concerns arose is not disclosed, we know their counsel "retained attorney and tax expert Stuart Hurwitz to evaluate the gift and personal injury allocations from the [settlement agreement]" sometime "after [it] was executed"; and by letter dated November 3, 2022, Mr. Hurwitz opined (as paraphrased by Govind) "that the allocations were illegal because the [s]ettlement payment[s] cannot be properly labeled as a gift or damages for personal injury" and "are tax deductible and must be reported precisely in accordance with tax law." As a result, in

Govind's telling, the settlement agreement had adverse tax implications to him and Sonal that they "did not anticipate."

On January 3, 2023, the Govind Parties filed a motion to vacate the settlement agreement on various grounds, including "mutual and unilateral mistakes relating to the parties' erroneous belief that the allocations of the [s]ettlement payments as a 'gift' and personal injury damages were proper and legal" and that Prashant and Mita's former counsel made misrepresentations to induce these mistakes on which the Govind Parties relied.

The trial court denied the Govind Parties' motion. It rejected each of their arguments on substantive grounds. It further found the Govind Parties were judicially estopped from challenging the settlement agreement, having previously moved to enforce it.

The Govind Parties appealed.[2]

## MOTION TO DISMISS

Prashant and Mita request dismissal of this appeal under the disentitlement doctrine. "Under the disentitlement doctrine, a reviewing court has inherent power to dismiss an appeal when

---

[2] The Govind Parties' notice of appeal refers to multiple orders of the trial court not addressed in their briefing. In addition to the order denying their motion to vacate the settlement, which they do address, they identify these other orders: "April 25, 2023 Order[] granting Motion to Enforce Settlement"; "May 8, 2023 Order (Payment) and Order (Elisor) and related orders." Any challenge to these other orders is forfeited due to the absence of any attempt to show error. (See *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685 [challenge to order deemed abandoned for failure to address in opening brief].)

6

the appealing party has refused to comply with the orders of the trial court." (*Ironridge Global IV, Ltd. v. ScripsAmerica, Inc.* (2015) 238 Cal.App.4th 259, 265.) The doctrine " 'is a discretionary tool that may be used . . . when the balance of the equitable concerns makes dismissal an appropriate sanction. [Citation.] The rationale underlying the doctrine is that a party to an action cannot seek the aid and assistance of an appellate court while standing in an attitude of contempt to the legal orders and processes of the courts of this state.' " (*Menezes v. McDaniel* (2019) 44 Cal.App.5th 340, 346.)

Prashant and Mita identify two failures on the part of the Govind Parties they contend violate one or more trial court orders. First, the Govind Parties refused to execute (and potentially never executed) a proper quitclaim deed to the Burbank Home, despite having been ordered to do so on December 12, 2022. They show the Govind Parties' actions around preparing the deed, including attempting to retain a life estate in the Burbank Home through their proposed form, were wholly disingenuous and constituted "willful non-compliance with the [trial] [c]ourt's directive [to execute a quitclaim deed]." However, the issue was apparently resolved following the trial court's order that an elisor be appointed to sign the deed for them if Govind and Sonal remained noncompliant. Because Prashant and Mita do not contend otherwise, we infer Govind and Sonal's interest in the Burbank Home has been disclaimed one way or another. Weighing the equities, we do not think disentitlement is warranted under the circumstances.

Second, Prashant and Mita allege the Govind Parties have still not complied with their obligation to provide a list of properties to secure their obligations under the settlement

7

agreement after having been ordered to do so–"[t]o date, none of the lists provided by [the Govind Parties] have satisfied the requirements of the [s]ettlement [a]greement, and thus, violate the trial court's [December 12, 2022] order to provide such a list." After questioning whether "Govind ha[d] complied with his obligation to select properties with 'at least a total of [$26 million] of equity,' " the court ordered Govind "to provide the collateral security list within 30 days." To show Govind failed to comply, Prashant and Mita cite multiple instances in the record of the same pre-order list and one list provided post-order. A comparison of these lists does not support Prashant and Mita's contention that the Govind Parties have only "used [the] same rehashed [property] values" the trial court said Prashant rightfully rejected. The only post-order list cited is materially different than the initial list, including a property not among those on the initial list with a purported equity value of nearly $12 million. While we have no basis to conclude this list is compliant, nor can we surmise from Prashant and Mita's citations that it is noncompliant—it is certainly not the "same" list the court found noncompliant. Prashant and Mita also note the later list did not propose an allocation of deeds of trust across the proposed properties. This aspect of the settlement agreement was not addressed in the trial court's December 12, 2022 order.

Prashant and Mita's motion to dismiss is denied.

## DISCUSSION

Because we affirm on the basis of judicial estoppel alone, we limit our discussion accordingly.

1. **Law and Standard of Review**

" ' "Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second

8

advantage by taking an incompatible position. . . . The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies. [Citation.] Application of the doctrine is discretionary." ' [Citation.] The doctrine applies when '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.' " (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986-987 (*Aguilar*).)

"The determination of whether judicial estoppel can apply to the facts is a question of law reviewed de novo, i.e., independently. [Citations.] [B]ut the findings of fact upon which the application of judicial estoppel is based are reviewed under the substantial evidence standard of review." (*Blix Street Records, Inc. v. Cassidy* (2010) 191 Cal.App.4th 39, 46 (*Blix Street*).) "Even if the necessary elements of judicial estoppel are found, because judicial estoppel is an equitable doctrine [citations], whether it should be applied is a matter within the discretion of the trial court [citations]. The exercise of discretion for an equitable determination is reviewed under an abuse of discretion standard." (*Id.* at p. 47.)

2. **Analysis**

Among other grounds, the Govind Parties tell us in their opening brief that the trial court denied their motion to vacate based on the doctrine of judicial estoppel. The court found, "[t]he doctrine of judicial estoppel precludes a party who has moved to enforce it from then moving to vacate it." (Citing *Blix Street*,

9

*supra*, 191 Cal.App.4th at p. 51.) The court found judicial estoppel applied here because, among other things, "[a]fter trial was stopped, . . . Govind sought dismissal [and] enforcement of the agreement . . . ."

The Govind Parties argue judicial estoppel cannot apply because two of its elements are unsatisfied. They say they did not take two "totally inconsistent" positions in moving to enforce the settlement agreement and then moving to vacate it; and, in any event, they were not successful in taking any position in their enforcement motion because it was denied. We disagree.

*Totally Inconsistent Positions.* In their enforcement motion, the Govind Parties recited that "[a] motion to enforce or confirm a settlement agreement . . . requires the trial court to determine 'in the first instance whether the parties have entered into an enforceable settlement.' (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360 . . . .)" They then asked the court to enforce the agreement. By doing so, the Govind Parties' position was necessarily that there was an enforceable settlement. This is totally inconsistent with their position in their motion to vacate that the settlement agreement is "unenforceable." (See *Blix Street*, *supra*, 191 Cal.App.4th at p. 51 [finding "totally inconsistent" the original position "that there was an enforceable settlement agreement" and the later position "that the settlement agreement was not enforceable"].)

*Success in asserting the position.* The Govind Parties were successful, because the trial court accepted their position that the settlement agreement was enforceable. (See *Aguilar, supra,* 32 Cal.4th at p. 986.) The court considered their motion and enforced the settlement agreement. It expressly found it was "empowered to enforce [the] provisions of the settlement

10

agreement." By the Govind Parties' own authority, such enforcement was necessarily predicated on the trial court's determination "in the first instance [that] the parties ha[d] entered into an enforceable settlement." (*Osumi v. Sutton*, *supra*, 151 Cal.App.4th at p. 1360.) At oral argument, counsel for the Govind Parties called the enforceability of the settlement agreement a mere "implicit predicate" to their motion to enforce the settlement under Code of Civil Procedure section 664.6. It is not. It is an express predicate. (*Osumi v. Sutton,* at p. 1360.)

This is so even though the court did not interpret the settlement agreement the way the Govind Parties wanted it to. Contrary to their arguments, judicial estoppel's success prong may be satisfied even where the court has not granted a party relief. This is illustrated in *Blix Street*, *supra*, 191 Cal.App.4th 39. There, the court concluded a party was judicially estopped from challenging the enforceability of a settlement agreement because the same party had previously acknowledged the agreement was enforceable. This acknowledgment came not in a motion for relief but in a statement to the court that the court accepted as true, evidenced only by its dismissal of the jury and termination of the trial. (*Ibid.*)

Finally, though the Govind Parties forfeited the issue by failing to raise it in their briefs, we note the other judicial estoppel prongs are satisfied. There is no dispute that the Govind Parties took both positions in the trial court. (*Aguilar*, *supra*, 32 Cal.4th at p. 986.) And, there is no indication the Govind Parties took their initial position as a result of ignorance, fraud, or mistake. (*Id*. at pp. 986-987.)

We give special attention to the last prong, which counsel for the Govind Parties belatedly raised for the first time at oral

11

argument.  (*Kinney v. Vaccari* (1980) 27 Cal.3d 348, 356, fn. 6 [" 'An appellate court is not required to consider any point made for the first time at oral argument, and it will be deemed waived.' "].)

Even if the issue had not been forfeited, all facts on which the Govind Parties predicated their motion to vacate were known to them at least prior to the December 8, 2022 hearing on their motion to enforce, at which they appeared through counsel who continued to advocate for their position.  They necessarily knew before signing the settlement agreement the extent of their participation in the mediation, who they relied on in deciding to sign the agreement, and what its terms were.  They knew before filing their enforcement motion to "clarif[y]" the agreement's terms that they disagreed (or at least feigned disagreement) with Prashant and Mita's interpretation of the same.  And, because of Mr. Hurwitz's letter, they knew not later than November 3, 2022—more than a month before the hearing at which they continued to press the enforcement motion—about the issues with the tax characterization provisions that they raised in the motion to vacate.

At oral argument, counsel for the Govind Parties suggested the new fact which justified the change in their position between October 2022 and January 2023 was that the trial court interpreted the settlement agreement in a way that was different than the Govind Parties wanted it to.  This is incorrect.  First, we cannot countenance a rule that dissatisfaction with a judicial determination of contractual obligations is a permissible basis on which to escape them.

Second, there was only one issue common to the Govind Parties' motion to enforce and their motion to vacate:  the

12

mechanism by which the parties would value the properties to serve as collateral for the Govind Parties' settlement payment obligations. In the enforcement motion, the Govind Parties said Prashant was obligated to obtain appraisals to dispute Govind's valuation. The trial court rejected this and directed the Govind Parties to provide a list with credible values. In the motion to vacate, the Govind Parties said the absence of an agreed valuation method rendered the agreement an unenforceable agreement to agree. This contention is frivolous and therefore could not possibly justify the Govind Parties' changing positions before the trial court.

The settlement agreement calls for the Govind Parties to pledge properties with equity value of $26 million and defines "[e]quity" as "the value of the property less any secured debt." "The ordinary and commonly understood meaning of 'value' is fair market value." (*Manhattan Sepulveda, Ltd. v. City of Manhattan Beach* (1994) 22 Cal.App.4th 865, 870.) " ' "The term [value] cannot be given a limited or special meaning as distinguished from its usual definition, unless an intention to so use it appears." ' " (*Ibid.*) No intention to use a value other than fair market value appears in the settlement agreement. Applying the general rule that a contract that does not specify price does not render the contract unenforceable so long as "a practicable mode is provided for the court to determine price without any new expression by the parties themselves," the court in *Goodwest Rubber Corp. v. Munoz* (1985) 170 Cal.App.3d 919, 921, enforced an option contract that was for "fair market value" because " '[f]air market value' is a well-established means of property valuation and is a common task performed by courts on a daily basis" (*ibid*). In view of these authorities, the "value" term of the

settlement agreement does not render, and never has rendered, the settlement agreement unenforceable.

There is undisputed, substantial evidence that supports the findings on which the trial court predicated its determination that judicial estoppel applied. We agree with the trial court that these facts permit application of the doctrine as a matter of law. And, we find no abuse of the trial court's decision to apply it here.

## DISPOSITION

We affirm the trial court's order denying the Govind Parties' motion to vacate and all other orders subject to the Govind Parties' notice of appeal dated June 20, 2023, described therein as "April 25, 2023 Order[] granting Motion to Enforce Settlement"; "May 8, 2023 Order (Payment) and Order (Elisor) and related orders." Costs are awarded to Prashant and Mita.


GRIMES, J.

WE CONCUR:


STRATTON, P. J.


VIRAMONTES, J.

14